NOs. 12-1593(L) & 12-1647

In The
**United States Court of Appeals
For The Fourth Circuit**

**SEVERSTAL SPARROWS POINT, LLC,**
now known as RG Steel Sparrows Point, LLC,

*Petitioner – Appellee/Cross-Appellant,*

v.

**STATE OF MARYLAND, DEPARTMENT OF THE ENVIRONMENT;
UNITED STATES OF AMERICA,**

*Respondents – Appellees,*

**CHESAPEAKE BAY FOUNDATION, INCORPORATED; BALTIMORE
HARBOR WATERKEEPER, INC.,** now known as Blue Water Baltimore,
Inc., **JOSEPH M. ANDERSON, ARTHUR W. COX, TINA L. COX,
REBECCA R. KOLBERG** and **WILTON F. STRONG,**

*Intervenors – Appellants/Cross-Appellees*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
CASE NOS. 1:97-cv-00558-JFM &1:97-cv-00559-JFM**

_____

**PAGE PROOF RESPONSE BRIEF OF
APPELLEE/CROSS-APPELLANT RG STEEL SPARROWS POINT, LLC**

_____

**Vincent Atriano
Andrew O. Etter
SQUIRE SANDERS (US) LLP
41 S. High Street
Columbus, Ohio 43215
Telephone:  (614) 365-2783**

*Counsel for Petitioner-Appellee/Cross-
Appellant RG Steel Sparrows Point, LLC*

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND OTHER INTERESTS

No. <u>12-1593</u>               Caption:  <u>Severstal Sparrows Point, LLC v. Chesapeake</u>
<u>Bay Foundation, Inc., et al.</u>

Pursuant to FRAP 26.1 and 28(a)(1) & (b) and Local Rule 26.1,

RG Steel Sparrows Point, LLC ("RG Sparrows'"), formerly known as Severstal
Sparrows Point, LLC, who is Appellee, makes the following disclosure:

1.      Is RG Sparrows a publicly held corporation or other public entity?     NO

2.      Does RG Sparrows have any parent corporations?                          YES

        RG Sparrows' parent company is RG Sparrows, LLC, which is a wholly
        owned subsidiary of The Renco Group, Inc., a private, family owned
        investment holding company.

3.      Is 10% or more of the stock of RG Sparrows owned by a publicly held
        corporation or other publicly held entity?                             NO

4.      Is there any other publicly held corporation or other publicly held entity that
        has a direct financial interest in the outcome of the litigation (Local Rule
        26.1(b))?                                                              NO

5.      Is RG Sparrows a trade association?                                     NO

6.      Does this case arise out of a bankruptcy proceeding?                    NO

# <u>TABLE OF CONTENTS</u>

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
INTERESTS.................................................................................................i

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES .......................................................................iv

JURISDICTIONAL STATEMENT ..............................................................1

    A.    The District Court's Subject Matter Jurisdiction ..........................1

    B.    This Court Lacks Subject Matter Jurisdiction Over CBF
        Intervenors' Appeal..........................................................................2

    C.    Filing Dates and Untimeliness of CBF Intervenors' Appeal ........2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................3

STATEMENT OF FACTS ............................................................................5

    A.    The 1997 Consent Decree ...........................................................5

    B.    April 23, 2003 BSC Bankruptcy Sale Order ................................6

    C.    RG Sparrows' Dispute Resolution Proceeding............................9

    D.    The CBF Intervenors' Limited Intervention ..............................10

    E.    The District Court's Subsequent Order Implementing the
        Parties' Stipulated Off-Shore Investigation "Framework" .........13

    F.    The CBF Intervenors' Untimely Notice of Appeal.....................15

SUMMARY OF ARGUMENT ....................................................................16

ARGUMENT ..............................................................................................19

    A.    This Court Lacks Subject Matter Jurisdiction Over CBF
        Intervenors' Appeal (No. 12-1593) Because their Notice of
        Appeal was Untimely ..................................................................19

B.    CBF Intervenors Lack Standing to Appeal the March 15, 2012 Order Entered After the End of Their Limited Intervention .......22

C.    Because the District Court's Rulings Did Not Modify the 1997 Consent Decree, Fed. R. Civ. P. 60(b) Is Inapplicable ...............28

D.    Even if the CBF Intervenors' Appeal Were Justiciable, There is Absolutely No Basis to Find Any Abuse of Discretion by the District Court ................................................................................31

E.    The District Court Did Not Abuse Its Discretion by Denying CBF Intervenors' Untimely Motion for Immaterial Discovery .......................................................................................39

CONCLUSION ...........................................................................................42

CERTIFICATE OF COMPLIANCE................................................................43

CERTIFICATE OF SERVICE ........................................................................44

# TABLE OF AUTHORITIES

<u>CASES</u>

*ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co*., 472 F.3d 99, 113 (4th Cir. 2006) ........................................................................................ 31

*American Lung Ass'n v. Kean*, 871 F.2d 319 (3d Cir. 1988) ................... 26, 28

*Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) .................................. 38

*Blackwater Security Consulting, LLC v. Nordan*, 2008 U.S. App. Lexis 28091 at *3 (4th Cir. Oct. 17, 2008) ...................................................... 19 n. 10

*Center for Biological Diversity v. Salazar*, 345 F. App'x. 256, 258 (9th Cir. 2009) ........................................................................................ 25

*CNF Constructors v. Donohoe Constr. Co.*, 57 F.3d 395 n.1 (4th Cir. 1995) ............................................................................... 19 n. 10

*Crofton Ventures L.P. v. G&H P'ship*, 258 F.3d 292, 300 (4th Cir. 2001) ..... 35

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 711-712 (1st Cir. 1998) .... 12 n. 8

*Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. Of Trustees*, 411 F.3d 777, 796-97 (6th Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1023 (2006) ..................................................................................... 26 n. 13

*El Paso v. El Paso Entertainment, Inc.*, 382 F. App'x. 361, 365 (5th Cir. 2010) ........................................................................................ 29

*Emeryville v. Robinson*, 621 F.3d 1251, 1258 n. 5 (9th Cir. 2010) ................ 21

*Ford v. Ridgeden Success, Inc.*, 177 F. App'x. 310, 311 (4th Cir. 2006) (per curiam) ...................................................................................... 20

*Futernick v. Sumpter Twp.*, 207 F.3d 305, 310 (6th Cir. 2000) ............... 12 n. 8

*Gautreaux v. Pierce*, 743 F.2d 526, 529-33 (7th Cir. 1984) ..................... 24, 27

*Hayes v. Crown Cent. LLC*, 137 F. App'x. 533, 534 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1032 (2005) ............................................................ 20 n. 11

*Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 131 (4th Cir. 1992), *cert. denied*, 113 S. Ct. 70 (1992) ........................................................................... 31

*Humphrey v. Prudential Secs.*, 4 F.3d 313 n.1 (4th Cir. 1993) ............. 19 n. 10

*In re Beard*, 811 F.2d 818, 822 (4th Cir. 1987) ................................................. 23

*In re Bethlehem Steel Corp., et al.,* Ch. 11 Case Nos. 01-15288 through -15302, 01-15308 through -15315 (Bankr. S.D.N.Y. 2003) .............................. 6

*In re General Motors Corp.,* 407 B.R. 463 at 505 (Bankr. S.D.N.Y. 2009) ... 36

*In re WP Steel Venture LLC, et al.*, Case No 12-11661 (Bankr. D. Del. 2012) ........................................................................................................... 7 n. 7

*Johnson v. Dempsey*, 1982 U.S. App. Lexis 12398, **1-3 (6th Cir. Feb. 10, 1982) ...................................................................................................... 29

*JTH Tax, Inc. v. H & R Block E. Tax Serv., Inc.*, 359 F.3d 699, 706 (4th Cir. 2004) ....................................................................................................... 31

*Liteky v. United States*, 510 U.S. 540, 555 (1994) ........................................... 38

*Kirby v. General Elec. Co.*, 210 F.R.D. 180 (W.D.N.C. 2000), aff'd, 20 F. App'x. 167, 169 (4th Cir. 2001) (per curiam) ................................................. 40

*Mallas v. United States*, 1995 U.S. App. Lexis 10766 at *5 (4th Cir. May 15, 1995) ...................................................................................................... 40

*Maryland v. Bethlehem Steel Corp.,* Civil Action No. 1:97-cv-00559-JFM (D. Md. 1997) ................................................................................................... 5

*Nguyen v. Regan, Halperin & Long, PLLC*, 145 F. App'x. 837, 837 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1629 (2006) ........................................... 20 n. 11

*Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 845 (4th Cir. 1992), *cert. denied sub nom. Mumaw v. Nurad, Inc.*, 113 S. Ct. 377 (1992) ....................................................................................................... 35

*Pennsylvania v. Flaherty*, 983 F.2d 1267, 1276 (3d Cir. 1993) ...................... 21

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 140 (1st Cir. 2006) .... 40

*Shobert v. Employee Benefits Admin. Comm.*, 140 F. App'x. 465, 465-66 (4th Cir. 2005) ........................................................................ 20 n. 11

*Snyder v. Bazargani*, 402 F. App'x. 681, 683 n. 1 (3d Cir. 2010) ................. 21

*Solis v. Current Dev. Corp.*, 557 F.3d 772, 775-76 (7th Cir. 2009) ............... 21

*SportsMart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316 (7th Cir. 1979) .................................................................................................. 21

*Stanwood Boom Works v. BP Exploration & Prod., Inc.*, 476 F. App'x. 572, 577 (5th Cir. 2012) ............................................................................... 41

*United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996), *cert. denied*, 117 S. Ct. 1251 (1997) ................................................................................................... 36

*United States v. Bethlehem Steel Corp.,* Civil Action No. 1:97-cv-00558-JFM (D. Md. 1997) ............................................................................... 5

*United States v. British Am. Tobacco Aus. Servcs., Ltd.*, 437 F.3d 1235 (D.C. Cir. 2006) ............................................................................................ 25

*United States v. Mann*, 709 F.3d 301, 306 (4th Cir. 2013) ........................... 31

*United States v. Under Seal (In re Grand Jury Subpoena)*, 597 F.3d 189, 195 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 1470 (2011) ..................................... 31

*Wolfe v. Clarke*, No. 12-7, 2013 U.S. App. LEXIS 10307 (4th Cir. May 22, 2013) ................................................................................................. 31

*Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993) ............... 40

## STATUTES

11 U.S.C. § 105(a) ...................................................................... 6, 32

11 U.S.C. § 363(f) ...................................................................... 6, 32, 36

28 U.S.C. § 1331 ............................................................................. 1

28 U.S.C. § 1345 ............................................................................. 1

28 U.S.C. § 1367 ............................................................................ 1

42 U.S.C. § 6903(3) .................................................................. 34, 35

42 U.S.C. § 6928 ............................................................................ 1

<u>RULES</u>

Fed. R. App. P. 4(a)(1) ................................................................. 20

Fed. R. App. P. 4(a)(1)(B) ........................................................... 19

Fed. R. App. P. 4(a)(4) ................................................................. 21

Fed. R. App. P. 4(a)(5) ............................................................ 20, 21

Fed. R. App. P. 4(a)(6) ............................................................ 20, 21

Fed. R. App. P. 26.1 ....................................................................... i

Fed. R. App. P. 28(a)(1) ................................................................. i

Fed. R. App. P. 28(b) ..................................................................... i

Fed. R. App. P. 28.1(e)(2) ........................................................... 43

Fed. R. App. P. 32(a)(5) ............................................................... 43

Fed. R. App. P. 32(a)(6) ............................................................... 43

Fed. R. App. P. 32(a)(7)(B) .......................................................... 43

Fed. R. App. P. 32(a)(7)(B)(iii) .................................................... 43

Fed. R. Civ. P. 24(a)(2) ................................................................ 25

Fed. R. Civ. P. 60(b) ................................................................28-30

4th Cir. Local Rule 26.1 ............................................................... i

4th Cir. Local Rule 26.1(b) ........................................................... i

D. Md. Local Rule 105.10 ...................................................... 13 n.9

# JURISDICTIONAL STATEMENT

**A.     The District Court's Subject Matter Jurisdiction.**

This District Court had subject matter jurisdiction over the environmental claims asserted by Appellees the State of Maryland, Department of Environment ("MDE") and the United States (on behalf of the United States Environmental Protection Agency ("U.S. EPA")) pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 6928 and 28 U.S.C. § 1367.  Based upon these claims, the District Court entered a final judgment in the form of a Consent Decree dated October 8, 1997 [J.A. __; Doc. #[1]13-1].  The Intervenor-Appellants[2] (hereinafter collectively "CBF Intervenors") were not original parties and have never been parties to the Consent Decree.

The District Court retained jurisdiction over the Consent Decree "for the purpose of ensuring compliance with its terms and conditions … and resolving disputes under Section XX herein ('DISPUTE RESOLUTION')."  *Id.* at p. 84. The District Court's continuing jurisdiction over its Consent Decree was the basis for its subject matter jurisdiction over the dispute resolution Petition filed by RG

---

[1]  All "Doc. #" references are to the docket of the District Court proceeding below.

[2]  Namely, Chesapeake Bay Foundation, Inc., Baltimore Harbor Waterkeeper, Inc. (now known as Blue Water Baltimore, Inc.), Joseph M. Anderson, Arthur W. Cox, Tina L. Cox, Rebecca R. Kolberg and Wilton F. Strong.

Steel Sparrows Point, LLC (then known as "Severstal Sparrows Point, LLC"; hereinafter "RG Sparrows") on July 30, 2010 [J.A. __; Doc. #10].

**B.    This Court Lacks Subject Matter Jurisdiction Over CBF Intervenors' Appeal.**

However, this Court lacks subject matter jurisdiction over CBF Intervenors' appeal because they failed to timely file a notice of appeal within sixty (60) days after any order entered by the District Court to which they were a party.  The District Court granted CBF Intervenors *limited* intervention "into the dispute resolution only, not into the original lawsuit that led to entry of the Consent Decree …." July 5, 2011 Opinion [J.A. __; Doc. #66] at p. 2, n. 2.

**C.    Filing Dates and Untimeliness of CBF Intervenors' Appeal.**

At the very latest, CBF Intervenors' limited intervention in the dispute resolution proceeding ended on February 13, 2012, when the District Court entered its order [J.A. __; Doc. #92] denying the CBF Intervenors' Motion for Extension of Time to Seek Reconsideration and for Leave of Court to Conduct Targeted Discovery [J.A. __; Doc. #88].  The CBF Intervenors did not file their Notice of Appeal with the District Court [J.A. __; Doc. #94] until May 2, 2012, which was more than sixty (60) days after the end of their limited intervention.  Consequently,

their Notice of Appeal was untimely and this Court lacks subject matter jurisdiction over their appeal.[3]

CBF Intervenors have no standing to appeal the District Court's March 15, 2012 stipulated Order Entering Agreement for Off-Shore Site Wide Investigation [J.A. __; Doc. #93] because they were no longer parties to the proceeding below when this stipulated Order was entered. This Order was based upon a December 28, 2011 Stipulation [J.A. __; Doc. #86-1] between the parties—namely, MDE, the U.S. and RG Sparrows. The CBF Intervenors were not involved in this Stipulation because their limited intervention had ended and they were no longer parties to the proceeding below.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Were the CBF Intervenors granted only limited intervention by the District Court in the dispute resolution only?

2.     Did the CBF Intervenors' limited intervention in the dispute resolution end on or before February 13, 2012, when the District Court entered its

---

[3] Upon the filing of CBF Intervenors' Notice of Appeal, RG Sparrows filed a "Notice of Protective Cross-Appeal" [J.A. __; Doc. #97] which asserted a cross-appeal "to the extent that the United States Court of Appeals for the Fourth Circuit has subject matter jurisdiction over" CBF Intervenors' appeal. Because this Court lacks subject matter jurisdiction over CBF Intervenors' untimely appeal, RG Sparrows hereby withdraws its Notice of Protective Cross-Appeal and submits no principal briefing in support of its cross-appeal No. 12-1647.

order denying the CBF Intervenors' Motion for Extension of Time to Seek Reconsideration and for Leave of Court to Conduct Targeted Discovery?

3.    Did the CBF Intervenors timely file their Notice of Appeal within sixty (60) days after the District Court's February 13, 2012 ruling?

4.    Do the CBF Intervenors lack standing to appeal the District Court's March 15, 2012 stipulated Order Entering Agreement for Off-Shore Site Wide Investigation?

5.    Does this Court lack subject matter jurisdiction over CBF Intervenors' appeal?

6.    Did the District Court's orders merely interpret and implement, rather than modify, the 1997 Consent Decree, such that Fed. R. Civ. P. 60(b) was inapplicable?

7.    Did CBF Intervenors fail to timely seek leave to conduct discovery prior to the District Court's hearing and ruling on RG Sparrows' dispute resolution Petition?

8.    Was the District Court's July 5, 2011 Opinion and Order resolving the dispute resolution Petition in RG Sparrows' favor consistent with the terms of the Bankruptcy Court's April 23, 2003 Sale Order and the approved March 12, 2003 Asset Purchase Agreement in Bethlehem Steel Corporation's Chapter 11 bankruptcy proceeding and with this Court's controlling precedent?

- 4 -

9.    Did the CBF Intervenors fail to show any abuse of discretion by the District Court?

## STATEMENT OF FACTS

**A.    The 1997 Consent Decree.**

The District Court proceeding from which the CBF Intervenors seek to appeal was a *post-judgment* "dispute resolution" arising out of the District Court's 1997 Consent Decree relating to the Sparrows Point steel manufacturing facility ("the Facility") formerly owned by Bethlehem Steel Corporation ("BSC"). In February 1997, the United States, on behalf of the U.S. Environmental Protection Agency ("U.S. EPA"), and the State of Maryland, Department of the Environment ("MDE"), filed separate civil complaints against BSC. *United States v. Bethlehem Steel Corp.*, Civil Action No. 1:97-cv-00559-JFM [J.A. __; Doc. #13-9], and *Maryland v. Bethlehem Steel Corp.*, Civil Action No. 1:97-cv-00558-JFM [J.A. __; Doc #13-10] (consolidated by Order entered Nov. 5, 1997) [J.A. __; Doc. #7].

These 1997 Complaints against BSC by U.S. EPA and MDE resulted in a final judgment in the form of an extensive Consent Decree entered by the District Court on October 8, 1997 [J.A. __; Doc. #13-1]. The Consent Decree required BSC to implement corrective measures including a "Site-Wide Investigation" of

the "Facility."[4]  *Id.*, Sec. V.B. at pp. 13-14.  The CBF Intervenors were not original

parties to these lower court proceedings, nor were they parties to the 1997 Consent

Decree.

**B.    April 23, 2003 BSC Bankruptcy Sale Order.**

On October 15, 2001, BSC and its affiliates filed voluntary petitions for

reorganization under Chapter 11 of the U.S. Bankruptcy Code.  *In re Bethlehem

Steel Corp., et al.*, Ch. 11 Case Nos. 01-15288 through -15302, 01-15308 through -

15315 (Bankr. S.D.N.Y. 2003).  On April 23, 2003, the Bankruptcy Court entered

a Sale Order[5] authorizing the sale of certain BSC assets, including the Facility, to

affiliates of International Steel Group Inc. ("ISG") pursuant to Sections 105(a) and

363(f) of the Bankruptcy Code, "free and clear of all Interests of any kind or nature

whatsoever," except for certain specified Assumed Liabilities.  [J.A. __; Doc. #13-

2, ¶7 at p. 11.]

The BSC Sale Order approved all of the terms and conditions of an Asset

Purchase Agreement ("APA") dated March 12, 2003 [J.A. __; Doc. #13-3], which

defined the Assumed Liabilities assumed by the Buyer as well as the "Excluded

---

[4]  The Consent Decree defines "Facility" to include the Facility only, which "consists of a peninsula bounded by the Back River, Bear Creek and the Northwest Branch of the Patapsco River."  *Id.*, Sec. III at p. 5.

[5]  "Order Authorizing (I) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts, and (III) Assumption of Certain Liabilities" (hereinafter "BSC Sale Order").

Liabilities" retained by BSC. Section 1.4(a) of the approved APA expressly provided that the Buyer did <u>not</u> assume: "all liabilities and obligations of Sellers for (i) **any environmental, health or safety matter** (including, without limitation, any liability or obligation arising under any Environmental Law) … (B) **resulting from the transport, disposal or treatment of any Hazardous Materials by any Seller on or prior to the Closing Date to or at any location other than the Real Property** …." *Id*. at 6 (emphasis added).

Although the "Buyer" of the Acquired Assets under the APA was "ISG Acquisition Inc.," [*see* J.A. __; Doc. #13-3 at p. 1], that entity assigned the Sparrows Point Facility assets to RG Steel Sparrows Point, LLC ("RG Sparrows"), which at that time was known as "ISG Sparrows Point Inc."[6] *Id*. at p. 51.[7]

---

[6] This entity later underwent several name changes, and was later known as "ISG Sparrows Point LLC," "Severstal Sparrows Point, LLC" and finally RG Steel Sparrows Point, LLC. *See* Certified Del. Sec'y. State filings [J.A. __; Doc. #22-10]; Aug. 1, 2011 Notice of Name Change [J.A. __; Doc. #70]. For ease of reference, this entity will be referred to throughout by its current name, "RG Sparrows."

[7] CBF Intervenors' Opening Brief [No. 12-1593 Doc: 38] contains numerous factual inaccuracies. For example, it states that "[o]wnership and operation of the [former BSC] facility has changed hands several times". *Id*. at pp. 1, 4, n. 2. Actually, until very recently, there had been *only one* owner and operator of the Facility since BSC—namely, the entity now known as RG Sparrows. *See* Certified May 7, 2003 Special Warranty Deed [J.A. __] between Grantor BSC and Grantee ISG Sparrows Point Inc. (now known as RG Sparrows). RG Sparrows is now involved in its own Chapter 11 bankruptcy proceeding (*In re WP Steel Venture LLC, et al*., Case No 12-11661 (Bankr. D. Del.)), and on August 15, 2012, the

On August 1, 2005, at the behest of the U.S., State of Maryland and BSC, the District Court entered a Stipulated Order Implementing **Modifications to Consent Decree** ("2005 Stipulated Order"; emphasis added) [J.A. __; Doc. #9]. The Stipulated Order also was signed by "ISG SPARROWS POINT," which as explained above is the same entity now known as RG Sparrows. *Id*. at p. 5.

This 2005 Stipulated Order noted that BSC and ISG Sparrows Point had "entered into an [asset purchase] agreement on March 12, 2003, by which ISG [Sparrows Point] agreed, <u>inter alia</u>, to assume all of the ongoing obligations of the Consent Decree, **as amended**" and "assumed ownership of the Sparrows Point Facility on April 30, 2003." *Id*., 5th & 6th Whereas clauses at p. 2 (emphasis added). It provided that "[e]ffective retroactively to April 30, 2003, ISG [Sparrows Point] shall be substituted for Bethlehem in all provisions of the Consent Decree where Bethlehem's name appears …." *Id*. at p. 2. Of course, no party to the original proceeding appealed the District Court's 2005 Stipulated Order to which they had previously stipulated.

Following entry of the 2005 Stipulated Order modifying the 1997 Consent Decree, RG Sparrows continued to implement the Consent Decree's requirements

---

Bankruptcy Court entered a sale order authorizing the sale of the Sparrows Point Facility to various third-party purchasers.

with respect to Site-Wide Investigation of the Facility under the direction and oversight of U.S. EPA and MDE.

## C.    RG Sparrows' Dispute Resolution Proceeding.

Paragraph XX.A.4 of the 1997 Consent Decree provides that the District Court "shall have jurisdiction to issue any order or resolve any dispute arising between the Parties with respect to matters within the scope of this Consent Decree and all documents incorporated herein." [J.A. __; Doc. #13-1 at p. 71.]

By letter dated August 13, 2009, MDE directed RG Sparrows to submit to the agencies a "work plan for evaluating the impacts to off-site sediment" under the Consent Decree. [J.A. __; Doc. #13-16 at p. 3.] In response, RG Sparrows submitted a proposed work plan on October 13, 2009. [J.A. __; Doc. #13-5; *see* J.A. __; Doc. #13-4 (submittal cover letter)]. Consistent with the BSC Sale Order and the approved APA, however, RG Sparrows' work plan did not propose investigation of off-site sediment contamination pre-dating the April 2003 Sale Order. Consequently, U.S. EPA partially disapproved RG Sparrows' work plan by letter dated February 3, 2010. [J.A. __; Doc. #13-17.]

In response, RG Sparrows timely issued to the agencies a notice of dispute dated March 4, 2010 [J.A. __; Doc. #13-7] in accordance with the dispute resolution provision in Sec. XX.A.1 of the Consent Decree. The parties were unable to resolve the dispute through negotiations. Consequently, on August 3,

2010, RG Sparrows timely filed a Petition for Resolution of Dispute ("Petition") with the District Court in accordance with Sec. XX.A.3 of the Consent Decree. [J.A. __; Doc. #13.]  The Petition challenged U.S. EPA's partial disapproval of RG Sparrows' limited off-site investigation work plan on the grounds that the agencies had wrongfully disregarded and ignored the Excluded Liabilities provisions of the 2003 BSC Sale Order and the approved APA.  *Id*.

**D.     The CBF Intervenors' Limited Intervention.**

On October 20, 2010, the CBF Intervenors filed their Joint Motion for Leave to Intervene in RG Sparrows' dispute resolution proceeding [J.A. __; Doc. #26], which RG Sparrows opposed.  [J.A. __; Doc. #33.]

The District Court held a hearing on RG Sparrows' dispute resolution Petition on March 11, 2011.  [*See* J.A. __; Doc. #56 (hearing transcript).]  Counsel for the CBF Intervenors were permitted to fully participate and present arguments in opposition to RG Sparrows' Petition.

Following the hearing, the District Court issued an Opinion [J.A. __; Doc. #66] and Order [J.A. __; Doc. #67] resolving the dispute in RG Sparrows' favor.  It ruled that "the Bankruptcy Sale Order does limit [RG Sparrows'] liability under the 1997 Consent Decree to releases of hazardous wastes and hazardous constituents occurring after April 23, 2003 only" and RG Sparrows "is not liable for remediating any discharges that occurred prior to the date of the Bankruptcy

Sale Order." [J.A. __: Doc. #66 at pp. 1-2, 11.]  This ruling overturned U.S. EPA's partial disapproval of RG Sparrows' proposed work plan, which the District Court found had been based upon the Agencies' incorrect "assumption that [RG Sparrows] was at least potentially liable for remediating historic, offsite contamination.  This assumption was erroneous." *Id*. at p. 12.  Accordingly, the July 5, 2011 Order ruled that "[t]he petition filed by [RG Sparrows] is granted to the extent that it requests that I resolve a dispute over the effect of the April 23, 2003 Bankruptcy Sale Order entered by the United States Bankruptcy Court for the Southern District of New York." [J.A. __: Doc. #67, ¶2 at p. 1.]

The District Court's July 5, 2011 Opinion also made the following request: "I ask EPA and MD[E] to reconsider their decision and request the parties to submit a report to me within 45 days stating whether they have been able to reach agreement as to the scope of the SWI that is to be conducted at [RG Sparrows'] expense." [J.A. __; Doc. #66 at p. 12.]  In a contemporaneous Memo To Counsel [J.A. __; Doc. #65], the District Court similarly *requested*, but did not order, that the Agencies confer with counsel for the CBF Intervenors during these discussions: "I would appreciate counsel for EPA and MDE conferring with counsel for the intervening plaintiffs …."  These requests were intended to encourage agreement

- 11 -

on the scope of off-site investigation in an effort to avoid another dispute resolution petition later.[8]

The District Court's July 5, 2011 Opinion and Order also granted the CBF Intervenors' Joint Motion to Intervene, but limited their intervention to the dispute resolution only: "I find that because the **intervention is into the dispute resolution only, not into the original [1997] lawsuit that led to entry of the Consent Decree**, the intervention is timely." [J.A. __; Doc. #66 at p. 2, n. 2. (emphasis added).]

On July 15, 2011, the U.S. filed an Unopposed Motion for Extension of Time [J.A. __; Doc. #68] until September 2, 2011 to seek reconsideration of the District Court's July 5, 2011 Opinion and Order, which the District Court granted. [J.A. __; Doc. #69.] The CBF Intervenors did not join in this Motion, and the Motion sought no relief on their behalves.[9]

---

[8]    CBF Intervenors mischaracterize the ensuing discussions as "settlement negotiations." *See* CBF Opening Brief (hereinafter "CBF Op. Brief") [No. 12-1593 Doc: 38] at pp. 6, 15. However, there was no pending dispute to settle. The District Court's July 5, 2011 ruling had already adjudicated RG Sparrows' dispute resolution Petition in its favor. Nor did these subsequent discussions affect the finality of the District Court's July 5, 2011 Opinion and Order. *See, e.g., Futernick v. Sumpter Twp.*, 207 F.3d 305, 311 (6th Cir. 2000) ("it is settled law that a court's retention of jurisdiction in order to facilitate the consideration of possible future relief does not undermine the finality of an otherwise appealable order.") (*quoting Cusumano v. Microsoft Corp.*, 162 F.3d 708, 711-712 (1st Cir. 1998)).

[9]    The CBF Intervenors did not file any motion to reconsider the District Court's July 5, 2011 Opinion and Order within 14 days after its entry (nor did they timely

- 12 -

Subsequently, on August 17, 2011, the U.S., Maryland and CBF Intervenors filed a Joint Motion for Further Extension of Time [J.A. __; Doc. #74] until October 14, 2011 to seek reconsideration of the District Court's July 5, 2011 Opinion and Order, which the Court granted on August 25, 2011 [J.A. __; Doc. #75]. The Parties requested several additional extensions [J.A. __, __ &__; Docs. ##77, 80 & 82], all of which were granted by the Court [J.A. __, __ &__; Docs. ##79, 81 & 83]. As a result of these rulings, the deadline for seeking reconsideration of the District Court's July 5, 2011 Opinion and Order ultimately was extended until December 30, 2011. [*See* J.A. __; Doc. #83.]

**E.     The District Court's Subsequent Order Implementing the Parties' Stipulated Off-Shore Investigation "Framework."**

RG Sparrows, the U.S. and the State of Maryland eventually reached agreement on a detailed "Framework" for off-shore investigation [J.A. __; Doc. #86-2], which they submitted to the District Court on December 28, 2011 under a formal Stipulation and proposed Order Entering Agreement for Off-Shore Site Wide Investigation. [J.A. __; Doc. #86-1.]

The CBF Intervenors did not agree with the stipulated Framework agreed upon by the parties to the Consent Decree, and filed a formal Objection on December 29, 2011. [J.A. __; Doc. #87.] On December 30, 2011, the CBF

_____

seek an extension of this 14-day period) in accordance with the District Court's Local Rule 105.10. Consequently, their right to seek reconsideration of the July 5, 2011 Opinion and Order expired on July 19, 2011.

Intervenors filed a Motion for Extension of Time to Seek Reconsideration of the July 5, 2011 Opinion and Order and for Leave of Court to Conduct Targeted Discovery.  [J.A. __; Doc. #88.]

On February 13, 2012, the District Court issued an order in the form of a Memo to Counsel denying the CBF Intervenors' Motion for Extension of Time to Seek Reconsideration and for Leave of Court to Conduct Targeted Discovery.  [J.A. __; Doc. #92.]   After expressing some concern about the timeliness of CBF Intervenors' Motion, the District Court indicated that the CBF Intervenors would not have been permitted to intervene in the post-dispute resolution proceedings that resulted in the proposed Framework: "I am likewise not at all sure that [the CBF] Intervenors should be granted leave to intervene as to the proposed framework upon which EPA, MDE, and RG Sparrows have agreed."  *Id.*

On March 15, 2012, the District Court entered its Order Entering Agreement for Off-Shore Site Wide Investigation between RG Sparrows, the U.S. and MDE.  [J.A. __; Doc. #93.]  It stated that RG Sparrows' dispute resolution proceeding had been previously resolved by the District Court's July 5, 2011 Opinion and Order: "this Court … issued its Opinion and Order on July 5, 2011, **which resolved the issues presented in the Petition**."  [J.A. __; Doc. #93 at p. 1 (emphasis added).]  Consequently, the CBF Intervenors' intervention, which was limited to the dispute resolution only, had already ended by the time that the District Court issued its

- 14 -

March 15, 2012 stipulated Order. Because they were no longer parties to the District Court proceeding when the March 15, 2012 Order was entered, the CBF Intervenors have no standing to appeal this ruling.

**F.    The CBF Intervenors' Untimely Notice of Appeal.**

The CBF Intervenors did not file their Notice of Appeal with the District Court until May 2, 2012. [J.A. __; Doc. #94.] The Notice's first paragraph states that the CBF Intervenors "hereby appeal … from an order entitled 'Stipulation and Order Entering Agreement for Off-Shore Site Wide Investigation' … entered in this action on the 15th day of March, 2012. Docket No. 93." *Id*. at p. 1. As noted above, however, the CBF Intervenors have no standing to appeal that Order because it was entered after their limited intervention in RG Sparrows' dispute resolution had ended.

The real objective of the CBF Intervenors' appeal was revealed in the very last sentence of their Notice of Appeal, which states that they are actually seeking to challenge "the July 5, 2010, [sic] Order"—an erroneous reference to the District Court's July 5, 20*11* Opinion and Order. [J.A. __; Doc. #94 at p. 2.] Indeed, the CBF Intervenors' Opening Brief in this appeal devotes 42 of its 51 pages to arguments challenging the District Court's July 5, 2011 ruling. [*See* No. 12-1593 Doc: 38.]

- 15 -

However, neither the CBF Intervenors nor any other party timely filed any notice of appeal within 60 days after the extended deadline of December 30, 2011 to seek reconsideration of the District Court's July 5, 2011 Opinion and Order. *See* [J.A. __; Doc. #83.] Nor did the CBF Intervenors or any other party timely appeal the District Court's February 13, 2012 Order [J.A. __; Doc. #92] denying the CBF Intervenors' Motion for Extension of Time to Seek Reconsideration and for Leave of Court to Conduct Targeted Discovery. Thus, this Court has no jurisdiction to review either of these rulings. Accordingly, this Court has no jurisdiction over the CBF Intervenors' appeal, which therefore must be dismissed.

## SUMMARY OF ARGUMENT

The District Court granted the CBF Intervenors *limited* intervention into the dispute resolution only, but not into the original lawsuit that led to entry of the 1997 Consent Decree. The District Court adjudicated RG Sparrows' dispute resolution Petition by Opinion and Order dated July 5, 2011. [J.A. __ & __; Docs. ##66 & 67.] Although the District Court extended the deadline to seek reconsideration of the July 5, 2011 ruling until December 30, 2011 [J.A. __; Doc. #83], the CBF Intervenors failed to file their Notice of Appeal within 60 days of this date or within 60 days after the District Court's February 13, 2012 order denying the their Motion for Extension of Time to Seek Reconsideration and for Leave of Court to Conduct Targeted Discovery [J.A. __; Doc. #92]. Because no

- 16 -

party timely filed a notice of appeal of these immediately appealable post-judgment final orders, this Court lacks subject matter jurisdiction to review them.

The CBF Intervenors lack standing to appeal the District Court's stipulated March 15, 2012 Order Entering Agreement for Off-Shore Site Wide Investigation [J.A. __; Doc. #93], which was entered *after* the District Court's resolution of RG Sparrows' dispute resolution Petition and *after* the CBF Intervenors' limited intervention had ended.

Neither the District Court's July 5, 2011 Opinion and Order [J.A. __ & __; Docs. ##66 & 67] nor its stipulated March 15, 2012 Order Entering Agreement for Off-Shore Site Wide Investigation [J.A. __; Doc. #93] "modified" the 1997 Consent Decree or "relieved" RG Sparrows from any Consent Order requirements. These rulings merely *interpreted and applied* the 1997 Consent Decree. Consequently, the District Court was not required to follow Fed. R. Civ. P. 60(b) in issuing these orders.

Because the District Court's post-judgment orders interpreted the District Court's own 1997 Consent Decree, these rulings are entitled to substantial deference and reviewed only for an abuse of discretion. Even if their appeal were justiciable, CBF Intervenors cannot demonstrate any abuse of discretion because the District Court's July 5, 2011 Opinion and Order were based upon the plain language of the April 23, 2003 BSC Sale Order [J.A. __; Doc. #13-2], the

- 17 -

March 12, 2003 BSC Asset Purchase Agreement [J.A. __; Doc. #13-3] and the District Court's own 2005 Stipulated Order Implementing Modifications to Consent Decree [J.A. __; Doc. #9], as well as this Court's controlling legal precedent. There is no legitimate basis for CBF Intervenors to contend that Judge Motz was biased or impartial.

Finally, the District Court did not abuse its discretion by denying the CBF Intervenors' untimely *post-adjudication* Motion for Extension of Time to Seek Reconsideration of the July 5, 2011 Opinion and Order and for Leave of Court to Conduct Targeted Discovery [J.A. __; Doc. #88], which sought discovery of inadmissible parol evidence. CBF Intervenors were not entitled to discovery under the dispute resolution provisions of the 1997 Consent Decree, and never sought leave to conduct such discovery prior to the District Court's March 11, 2011 hearing or its July 5, 2011 Opinion and Order adjudicating RG Sparrows' dispute resolution Petition.

## ARGUMENT

**A.    This Court Lacks Subject Matter Jurisdiction Over CBF Intervenors' Appeal (No. 12-1593) Because their Notice of Appeal was Untimely.[10]**

Fed. R. App. P. 4(a)(1)(B) provides that a notice of appeal in a civil case in which one of the parties is the United States may be filed by any party within 60 days after entry of the judgment or order appealed from. As noted above, the District Court extended the deadline to seek reconsideration of the District Court's July 5, 2011 Opinion and Order until December 30, 2011. [*See* J.A. __; Doc. #83.] However, neither the CBF Intervenors nor any other party timely filed any notice of appeal of the District Court's July 5, 2011 Opinion and Order within 60 days after this extended deadline, or by February 28, 2012.

Likewise, neither the CBF Intervenors nor any other party timely filed a notice of appeal of the District Court's February 13, 2012 Order [J.A. __; Doc. #92] denying the CBF Intervenors' Motion for Extension of Time to Seek

---

[10] On November 26, 2012, RG Sparrows filed a Motion to Dismiss the CBF Intervenors' Appeal for Lack of Jurisdiction [No. 12-1593 Doc: 47], which this Court's motion panel denied by order dated June 6, 2013 [No. 12-1593 Doc: 56]. However, "the doctrine of 'the law of the case' does not prevent [the] Court from revisiting a prior ruling of a motion panel on the Court's jurisdiction." *CNF Constr. v. Donohoe Constr. Co.*, 57 F.3d 395 n.1 (4th Cir. 1995); *Humphrey v. Prudential Secs.*, 4 F.3d 313 n.1 (4th Cir. 1993) (motion panel's denial of motion to dismiss appeal "in no way established a final judgment from which the preclusive effects of res judicata should emanate"); *Blackwater Security Consulting, LLC v. Nordan*, 2008 U.S. App. Lexis 28091 at *3 (4th Cir. Oct. 17, 2008) (appeal dismissed for lack of jurisdiction by merits panel following denial of motion to dismiss).

- 19 -

Reconsideration, 60 days from which was April 13, 2012.  Consequently, this Court has no jurisdiction to review either the District Court's July 5, 2011 Opinion and Order or its February 13, 2012 Order.

It is well-established that a federal court of appeals has no jurisdiction to consider an untimely notice of appeal.  For example, in *Ford v. Ridgeden Success, Inc.*, 177 F. App'x. 310, 311 (4th Cir. 2006) (per curiam), this Court granted a motion to dismiss the appeal for lack of jurisdiction because the notice of appeal was not timely filed.  This Court explained that parties are accorded the time specified in Fed. R. App. P. 4(a)(1) "unless the district court extends the appeal period under *Fed. R. App. P. 4(a)(5)* or reopens the appeal period under *Fed. R. App. P. 4(a)(6)*."  This Court further noted that "[t]his appeal period is 'mandatory and jurisdictional.'" *Id*. (citations omitted).[11]

In this case, there is no question that the CBF Intervenors' May 2, 2012 Notice of Appeal was <u>not</u> timely filed within 60 days of either: (1) the December 30, 2011 extended deadline to seek reconsideration of the District Court's July 5, 2011 Opinion and Order; or (2) the February 13, 2012 Order denying the CBF Intervenors' Motion for Extension of Time to Seek

---

[11]  *Accord, Nguyen v. Regan, Halperin & Long, PLLC*, 145 F. App'x. 837, 837 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1629 (2006); *Shobert v. Employee Benefits Admin. Comm.*, 140 F. App'x. 465, 465-66 (4th Cir. 2005); *Hayes v. Crown Cent. LLC*, 137 F. App'x. 533, 534 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1032 (2005).

Reconsideration and for Leave of Court to Conduct Targeted Discovery.  The District Court did not extend the appeal periods for either of these rulings under Fed. R. App. P. 4(a)(5), nor did it reopen the appeal period in accordance with Fed. R. App. P. 4(a)(6).  Nor were the above-referenced appeal deadlines for these rulings further extended by any District Court order disposing of any of the motions set forth in Fed. R. App. P. 4(a)(4).

Numerous Circuit Court decisions make clear that such post-judgment orders are immediately and separately appealable.  *See, e.g., Snyder v. Bazargani*, 402 F. App'x. 681, 683 n. 1 (3d Cir. 2010) ("The fact that … motions remain outstanding does not affect our jurisdiction in this matter since the denial of post-judgment motions are separately appealable."); *Solis v. Current Dev. Corp.*, 557 F.3d 772, 775-76 (7th Cir. 2009) ("The consent decree, which wrapped up the … initial suit, was a final order….  [A]n order that addresses all the issues raised in the motion that sparked the post judgment proceedings is treated as final."); *Pennsylvania v. Flaherty*, 983 F.2d 1267, 1276 (3d Cir. 1993) ("Post-judgment orders are final for purposes of [28 U.S.C.] § 1291 and immediately appealable"); *SportsMart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316 (7th Cir. 1979) ("the consent decree 'operated as a final judgment … [and] because the motion for contempt was denied after this judgment … [the] action by the district court is final and therefore reviewable.'"); *see also, Emeryville v. Robinson*, 621 F.3d 1251,

- 21 -

1258 n. 5 (9th Cir. 2010) (appellate court lacked jurisdiction due to the defendant's failure to timely appeal district court's denial of a post-judgment motion seeking enforcement of consent decree under CERCLA).[12]

Consequently, because CBF Intervenors' Notice of Appeal was not timely filed, this Court has no jurisdiction to review the District Court's July 5, 2011 Opinion and Order or its February 13, 2012 Order denying the CBF Intervenors' Motion for Extension of Time to Seek Reconsideration.  Therefore, their appeal of these rulings must be dismissed.

**B.    CBF Intervenors Lack Standing to Appeal the March 15, 2012 Order Entered After the End of Their Limited Intervention.**

As noted above, the District Court's July 5, 2011 Opinion and Order allowed the CBF Intervenors to intervene, but <u>limited</u> their intervention to "the dispute resolution only, not into the original lawsuit that led to entry of the Consent Decree."  [J.A. __; Doc. #66 at p. 2, n. 2.]  In its later February 13, 2012 ruling [J.A. __; Doc. #92], the District Court noted that the CBF Intervenors would <u>not</u> have been permitted to intervene in the post-dispute resolution proceedings that resulted in the Framework for off-shore investigation: "I am likewise not at all sure

---

[12]  By contrast, the "final order" cases relied upon by the CBF Intervenors in their Opposition [No. 12-1593 Doc: 52] to RG Sparrows' Motion to Dismiss related to *pre*-judgment orders and have no bearing on the appealability of the *post*-judgment final orders at issue here.

- 22 -

that [the CBF] Intervenors should be granted leave to intervene as to the proposed framework upon which EPA, MDE, and RG Sparrows have agreed." *Id.*

Thus, it is clear that the CBF Intervenors' intervention below had ended well before the District Court entered its March 15, 2012 Order Entering Agreement for Off-Shore Site Wide Investigation.   [J.A. __; Doc. #93.]   Because the CBF Intervenors were no longer parties to the District Court proceeding when this stipulated Order was entered, they have no standing to appeal it.

This Court has rejected similar requests for relief by limited intervenors who were no longer parties at the time of the lower court proceedings in question.  *In re Beard*, 811 F.2d 818, 822 (4th Cir. 1987), involved Dalkon Shield claimants who had been permitted to intervene in the district court proceedings "for the limited purpose of opposing [the defendant manufacturer's] motion to certify a punitive damage class."  After the district court had denied the defendant's motion to certify, the district judge engaged in ex parte meetings with certain parties with consent of the other parties but not the intervenors.  *Id.* at 829.

The intervenors petitioned the Fourth Circuit to issue a writ of mandamus disqualifying the district judge due to these ex parte communications.  This Court denied the writ because the petitioners, as limited intervenors, were no longer parties to the district court proceedings when the ex parte discussions occurred:

> These petitioners were not parties to the Dalkon Shield cases when the meeting occurred.  **Their limited intervention in the case had**

- 23 -

**ended** …. They now seek disqualification because of action taken by the judge in a case in which **they were no longer parties**.

*Id*. at 829 (emphasis added). This Court further noted that "petitioners cannot complain about such a conversation because they had **intervened in the … litigation for a very limited purpose** …." *Id*. (emphasis added; citations omitted).

The Seventh Circuit case of *Gautreaux v. Pierce*, 743 F.2d 526, 529-33 (7th Cir. 1984), involved facts closely analogous to the instant case. Certain residents sought to intervene in the district court proceeding in order to claim that the U.S. Department of Housing (HUD) had violated a consent decree by funding a development project. *Id*. at 527. The district court allowed intervention "'for the limited purpose of requesting that the Court determine whether or not HUD's involvement with the … development is or is not precluded by the terms of the consent decree,'" but ruled in HUD's favor on the merits. *Id*. at 528.

After this ruling, HUD developed a marketing plan for the new project. The intervenors were given the opportunity to comment on the plan to the district court. *Id*. The intervenors subsequently filed a motion for injunctive and other relief challenging the proposed marketing plan. The district court denied the intervenors' motion because they "lacked standing to continue to participate in the lawsuit, since their challenge to the proposed marketing plan exceeded the scope of the original intervention." *Id*. at 529.

- 24 -

The Seventh Circuit affirmed, ruling that "[t]he district court was correct in denying the intervenors' motion on the basis that it was beyond the scope of the original limited intervention." *Id*. at 530. The Court of Appeals noted "[t]here was no claim in the appeal from the original intervention decision … nor is there any claim now, that the district court erred in imposing the limitation on intervention, even though the district court determined that the intervention was a matter of right pursuant to Fed. R. Civ. P. 24(a)(2)." *Id*., n. 8.

Similarly, in *Center for Biological Diversity v. Salazar*, 345 F. App'x. 256, 258 (9th Cir. 2009), the Ninth Circuit dismissed a limited intervenor's appeal of several district court orders on the ground that such orders were outside the scope of its limited intervention. The Court of Appeals specifically found that the intervenor "lacks standing to appeal" a district court's order "because this issue was **not within the scope of the limited intervention** granted to [it]. Accordingly, [intervenor] is **not a party to the order** and thus cannot appeal it." *Id*. (emphasis added). Accordingly, the Court "dismiss[ed] this appeal for lack of jurisdiction." *Id*.

Likewise, in *United States v. British Am. Tobacco Aus. Servcs., Ltd.*, 437 F.3d 1235 (D.C. Cir. 2006), the D.C. Circuit soundly rejected a limited intervenor's appeal of district court rulings outside the scope of its intervention. In that case, the intervenor was allowed to intervene in the district court proceeding

for the limited purpose of protecting its privileges in certain documents, but not as "a full party to the suit." *Id*. at 1237. Later, the district court denied the intervenor's motion for expanded intervention to allow it to protect its privileges in certain testimony, which the Court of Appeals affirmed. *Id*. at 1238, 1240.[13]

Following trial, the intervenor sought to appeal the district court's order overruling objections to certain trial testimony. *Id*. at 1239. The Court of Appeals rejected the appeal because the intervenor "is **not a party** to the orders concerning … testimony and **cannot appeal them**." *Id.* at 1240 (emphasis added; citations omitted).

Finally, in *American Lung Ass'n v. Kean*, 871 F.2d 319 (3d Cir. 1989), several industry trade associations sought to intervene in a citizen suit brought by clean air advocacy groups seeking to compel the State to implement ozone emission regulations. The district court denied the trade associations' motion to intervene in the liability phase of the trial, but allowed them limited intervention for the sole purpose of addressing an appropriate schedule for compliance with the Court's liability decision. *Id*. at 323. The intervenors then sought to appeal the district court's rulings on both the State's liability as well as the schedule for

---

[13] *Accord*, *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. Of Trustees*, 411 F.3d 777, 796-97 (6th Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1023 (2006) (appeal by intervenor State rejected because State was allowed to intervene solely to defend the constitutionality of State's enabling statute and district court had made no ruling with respect to the constitutionality of such statute).

- 26 -

compliance. *Id.* The Third Circuit held that because the trade associations had failed to appeal the denial of their intervention in the liability phase of trial, they could not challenge the district court's determination of liability on appeal. *Id.* at 322.

As demonstrated by the foregoing appellate decisions, the CBF Intervenors clearly lack standing to challenge the District Court's March 15, 2012 Order Entering Agreement for Off-Shore Site Wide Investigation [J.A. __; Doc. #93] entered after the conclusion of RG Sparrows' dispute resolution. As this Court recognized in *Beard*, limited intervenors may not seek relief from the appellate court with respect to district court matters which take place after their limited intervention has ended and they are no longer parties. Consistent with *Gautreaux*, *Center for Biological Diversity* and *British Am. Tobacco*, this Court should rule that the CBF Intervenors lack standing to appeal the March 15, 2012 Order issued after their limited intervention had ended, and dismiss their appeal for lack of jurisdiction.

Finally, it should be noted that nowhere in their 51-page Opening Brief do the CBF Intervenors ever challenge the District Court's ruling limiting their intervention to the dispute resolution only. [*See* J.A. __, Doc. #66 at p. 2, n. 2.] This was an important factor in several of the appellate decisions above. *See, e.g.*, *Gautreaux, supra*, 743 F.2d at 530, n. 8 ("There was no claim in the appeal from

the original intervention decision … nor is there any claim now, that the district court erred in imposing the limitation on intervention"); *American Lung Ass'n, supra*, 871 F.2d at 322 (because intervenors failed to appeal the limitations on their intervention, they may not challenge the district court's liability determination on appeal). Like the limited intervenors in those cases, the CBF Intervenors' failure to appeal the District Court's limitations on their intervention precludes their attempt to appeal the District Court's rulings issued outside the scope of their intervention.

## C.  Because the District Court's Rulings Did Not Modify the 1997 Consent Decree, Fed. R. Civ. P. 60(b) Is Inapplicable.

Contrary to CBF Intervenors' repeated contention, neither (i) the District Court's July 5, 2011 Opinion and Order adjudicating RG Sparrows' dispute resolution Petition nor (ii) its stipulated Order of March 15, 2012 accepting the Parties' Framework for off-site investigation "modified" the 1997 Consent Decree in any way. These rulings merely *interpreted and applied* the 1997 Consent Decree, as it had been *previously* modified by the District Court's August 1, 2005 Stipulated Order Implementing Modifications to Consent Decree. [J.A. __; Doc. #9.] In no way did these orders "relieve" RG Sparrows "from a final judgment, order, or proceeding," which is required for Rule 60(b) to apply. Consequently, the CBF Intervenors' primary argument that the District Court was required to

- 28 -

comply with Fed. R. Civ. P. 60(b) is completely misplaced because the Rule does not even apply.

In *Johnson v. Dempsey*, 1982 U.S. App. Lexis 12398, **1-3 (6th Cir. Feb. 10, 1982), the Sixth Circuit rejected this exact same argument. That case involved an appeal from a district court's order allowing the defendant to eliminate a program which it had implemented under a consent decree previously issued by the district court. The plaintiffs appealed, arguing that the district court's order "is a modification of the decree which can only be made pursuant to Fed. R. Civ. Proc. 60(b)." *Id*. at *2. The Court of Appeals disagreed. It noted that "[t]he consent decree did not require defendant to maintain any particular program … [but] only that whatever programs the defendant chose to offer" be provided. *Id*. "The order by the District Court merely interpreted the consent decree, it did not modify its substance. Hence Rule 60(b) was not implicated and the procedure followed by the District Court is without reproach." *Id*.; *accord, El Paso v. El Paso Entertainment, Inc.*, 382 F. App'x. 361, 365 (5th Cir. 2010) (because plaintiff city's declaratory judgment action sought only a determination of "the rights of the parties as they currently exist" under a prior Judgment and Injunction rather than its "modification or vacation," "the City was not required to employ Rule 60(b)").

Here, there is no question that the District Court's orders merely interpreted and implemented the 1997 Consent Decree. The District Court's July 5, 2011

- 29 -

Opinion [J.A. __; Doc. #66] and Order [J.A. __; Doc. #67] were issued in accordance with the dispute resolution procedure established under the Consent Decree itself. RG Sparrows initiated the dispute resolution in order to obtain the District Court's interpretation of its own 1997 Consent Decree, as the decree had been previously modified years earlier by the Court's August 1, 2005 Stipulated Order Implementing Modifications to Consent Decree. [J.A. __; Doc. #9.]

The District Court's March 15, 2012 stipulated Order Entering Agreement for Off-Shore Site Wide Investigation [J.A. __; Doc. #93], which was entered after RG Sparrows' dispute resolution proceeding had ended, provided for future implementation of the off-site investigation as part of the Site-Wide Investigation required under the previously-modified 1997 Consent Decree. The Order merely states that the "Framework" for such off-shore investigation agreed upon by the parties to the Consent Decree (which the CBF Intervenors are not) "is accepted by the Court." *Id.*, ¶1 at p. 2. This stipulated Order did not modify or vacate the 1997 Consent Decree in any way. *See id.*, ¶4 at p. 2 ("nothing herein shall otherwise alter or abridge the obligations and requirements of the Parties under the 1997 Consent Decree.").

Because these rulings merely interpreted and implemented (but did not modify) the District Court's own prior orders, Fed. R. Civ. P. 60(b) clearly did not apply.

- 30 -

**D.  Even if the CBF Intervenors' Appeal Were Justiciable, There is Absolutely No Basis to Find Any Abuse of Discretion by the District Court.**

As this Court has repeatedly ruled, "we review a district court's interpretation of its own orders for abuse of discretion." *Wolfe v. Clarke*, 2013 U.S. App. LEXIS 10307, *18 (4th Cir. May 22, 2013); *accord*, *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 131 (4th Cir. 1992), *cert. denied*, 113 S. Ct. 70 (1992). (interpretation of consent decree).  "[W]e are obliged to accord substantial deference to a district court's interpretation of its own judgment." *ABT Bldg. Prods. Corp. v. National Union Fire Ins. Co*., 472 F.3d 99, 113 (4th Cir. 2006)**;** *accord*, *United States v. Mann*, 709 F.3d 301, 306 (4th Cir. 2013) ("It is peculiarly within the province of the district court … to determine the meaning of its own order"; citation omitted).

Indeed, "to sustain appellate review, district courts need only adopt a reasonable construction of the terms contained in their orders." *JTH Tax, Inc. v. H & R Block E. Tax Serv., Inc.*, 359 F.3d 699, 706 (4th Cir. 2004); *accord*, *United States v. Under Seal (In re Grand Jury Subpoena)*, 597 F.3d 189, 195 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 1470 (2011) (district court's analysis is given "especial respect" where the findings are based on the district court's interpretation of its own orders).  Consequently, the CBF Intervenors must demonstrate an abuse

of discretion by the District Court in order to overturn its interpretations of its own 1997 Consent Decree.[14]

CBF Intervenors' argument that Judge Motz's thorough and carefully reasoned 13-page July 5, 2011 Opinion and Order [J.A. __ & __; Docs. ##66 & 67] adjudicating RG Sparrows' dispute resolution Petition was "arbitrary" is completely baseless. Their argument simply ignores the express language of both the April 23, 2003 BSC Sale Order [J.A. __; Doc. #13-2] and the March 12, 2003 BSC Asset Purchase Agreement ("APA") [J.A. __; Doc. #13-3]. They also mischaracterize the 2005 Stipulated Order by claiming it substituted ISG for BSC in "every aspect of the Consent Decree," despite that Order's language to the contrary. *See* CBF Op. Brief at p. 18.

The BSC Sale Order authorized the sale of certain BSC assets, including the Facility, to affiliates of International Steel Group Inc. ("ISG") pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code "free and clear of all Interests of any kind or nature whatsoever," except for certain specified Assumed Liabilities specified in the APA. [J.A. __; Doc. #13-2, ¶7 at p. 11.][15]

---

[14]   CBF Intervenors appear to recognize that they must show an abuse of discretion. *See* CBF Op. Brief at p. 26.

[15]   The Bankruptcy Court specifically noted that "ISG would not have entered into the Agreement and would not consummate the transactions contemplated thereby, ... if ISG would, or in the future could, be liable for any of the Interests including, but not limited to ... (5) environmental Claims or Liens arising from conditions

Accordingly, the District Court began by examining the language of the

Bankruptcy Court-approved APA.  [J.A. __; Doc. #13-3.]  It noted that Section 1.3

of the APA, titled "Assumption of Liabilities," provides:

> [A]t the Closing, Buyer shall assume and thereafter pay, perform, and
> discharge when due, all of the following liabilities …
>
> (c)  **except as set forth in <u>Section 1.4(a)</u>,** all liabilities and obligations of
> any Seller relating to the Acquired Assets and arising under any
> Environmental Law . . .

[*See* J.A. __; Doc. #66 at p. 7 (*quoting* J.A. __; Doc. #13-3 at p. 5; emphasis

added).]   As the District Court recognized, the "Sparrows Point Facility is …

clearly an 'Acquired Asset' [as defined] under the APA."  [J.A. __; Doc. #66 at pp.

7-8, n. 5; *see* J.A. __; Doc. #13-3, Sec. 1.1 at p. 5 & Sch. 1.1(b).]

Next, the District Court examined Section 1.4 of the APA, which defined the

"Excluded Liabilities" <u>not</u> assumed by the Buyer, and which were instead retained

by the Sellers (BSC).  [J.A. __; Doc. #66 at p. 8.]  Section 1.4(a) of the APA

defines these "Excluded Liabilities" as:

> (a)  **all liabilities and obligations of Sellers for (i) any**
> **environmental, health or safety matter** (including, without
> limitation, any liability or obligation arising under any
> **Environmental Law**) … (B) **resulting from the transport, disposal**
> **or treatment of any Hazardous Materials by any Seller on or**
> **prior to the Closing Date to or at any location other than the Real**
> **Property** ....

first existing on or prior to Closing (including, without limitation, the presence of
hazardous, toxic, polluting, or contaminating substances or waste) that may be
asserted on any basis ...."  *Id*. ¶R at p. 7.

[J.A. __; Doc. #13-3 at p. 6 (emphasis added).]

The APA defines "Environmental Laws" to mean "all applicable federal, state and local … orders, judgments, [in]junctions, [and] **decrees** … concerning pollution or protection of human health and the environment …." *Id*., § 12.1 at p. 56 (emphasis added).  Because Section 1.4(a) of the APA excluded certain liabilities of BSC under any "Environmental Law," which is defined to include federal court decrees, there is no question that the provision excluded certain specified liabilities of BSC under the 1997 Consent Decree.[16]

The District Court determined that Section 1.4(a)(i)(B) of the APA, which excluded liability "resulting from the … disposal … of any Hazardous Materials by any Seller on or prior to the Closing Date to or at any location other than the Real Property," excluded the Buyer's liability for BSC's historic off-site contamination under the 1997 Consent Decree.  [J.A. __; Doc. #66 at p. 8.]  The District Court based its determination on the definition of "disposal" in the Resource Conservation and Recovery Act (RCRA), which includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water …."  42 U.S.C. § 6903(3).

---

[16]  Moreover, Schedule 4.1(p) of the APA, which listed Environmental Matters known to Sellers (BSC), expressly mentioned the 1997 Consent Decree.  *Id*., Sch. 4.1(p).  Consequently, there can be no question that certain liabilities of BSC under the 1997 Consent Decree were excluded by Sec. 1.4(a) of the APA.

- 34 -

In addition, the District Court followed this Court's controlling precedent in *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 845 (4th Cir. 1992), *cert. denied sub nom. Mumaw v. Nurad, Inc.*, 113 S. Ct. 377 (1992), which interpreted the RCRA definition of disposal in 42 U.S.C. § 6903(3) to include "'passive'" contamination "'without any active human participation.'" [J.A. __; Doc. #66 at p. 9.] It also noted this Court's prior ruling in *Crofton Ventures L.P. v. G&H P'ship*, 258 F.3d 292, 300 (4th Cir. 2001) in concluding that the term "disposal" has been construed by the Fourth Circuit to include "passive migration offsite."[17] [J.A. __; Doc. #66 at pp. 8-9.] Because these rulings were "well before the 2003 APA and Bankruptcy Order," the District Court interpreted "disposal" in Section 1.4(a)(i)(B) of the APA consistent with this controlling precedent. [J.A. __; Doc. #66 at p. 9.]

It was "[a]gainst this background" that the District Court construed "Section 1.4(a)(i)(B) of the APA as excluding [RG Sparrows] from liability resulting from active discharge, deposit, injection, dumping, as well as passive spilling or leaking 'of any Hazardous Materials by any Seller on or prior to the Closing Date to or at any location other than the Real Property.'" [J.A. __; Doc. #66 at p. 9.] Thus, the District Court ruled that "Section 1.4(a)(i)(B), as approved by the Bankruptcy

---

[17] CBF's Opening Brief even admits that "disposal … could include seepage or leaching offsite." p. 23.

Court, relieves [RG Sparrows] of liability for direct disposal offsite, as well as migration to offsite locations, of hazardous materials by BSC, the entity responsible for such disposal as the site owner prior to the closing date in 2003." *Id*.

The District Court then noted that the BSC Sale Order "was authorized by a Section 363 sale under the Bankruptcy Code, 11 U.S.C. § 363, and eliminates [RG Sparrows'] liability for toxic discharge that occurred prior to the date of the order's issuance." *Id* at p. 10. Once again, the District Court relied on this Court's controlling precedent as set forth in *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996), *cert. denied*, 117 S. Ct. 1251 (1997) ("the Bankruptcy Court may extinguish … successor liability pursuant to 11 U.S.C. § 363(f)(5)"); *accord, In re General Motors Corp.*, 407 B.R. 463 at 505 (Bankr. S.D.N.Y. 2009) (Section "363(f) may appropriately be invoked to sell free and clear of successor liability claims").

CBF Intervenors' Opening Brief offers no cogent reason to suggest that the District Court acted arbitrarily or otherwise abused its discretion in reaching these conclusions. First off, they make the wholly unsupportable claim that: "[n]either the terms of the APA, nor the bankruptcy sale order nor the 2005 stipulated modification order explicitly modified [the Buyer's] liabilities under the Consent Decree." CBF Op. Brief at p. 17. This groundless assertion is easily refuted by the

- 36 -

express terms of these documents—namely, the "free and clear of all Interests of any kind or nature whatsoever" language in the BSC Sale Order [J.A. __; Doc. #13-2, ¶7 at p. 11], the "except" language in Section 1.3 of the APA [J.A. __; Doc. #13-3 at p. 5] and the "Excluded Liabilities" language in Section 1.4(a) of the APA [J.A. __; Doc. #13-3 at p. 6], all of which were discussed above.

Moreover, the CBF Intervenors' argument is directly contrary to the language of the District Court's 2005 Stipulated Order titled "Stipulated Order Implementing **Modifications** to Consent Decree." [J.A. __; Doc. #9 (emphasis added).] This 2005 Stipulated Order noted that BSC and ISG had "entered into an [asset purchase] agreement on March 12, 2003, by which ISG agreed, <u>inter alia</u>, to assume all of the ongoing obligations of the Consent Decree, **as amended ….**" *Id.*, 5th Whereas clause at p. 2 (emphasis added). Indeed, the 2005 Stipulated Order uses the qualifier "as amended" no fewer than three separate times. *Id.*

In its July 5, 2011 Opinion, the District Court construed the 2005 Stipulated Order (which of course was its own prior order) and agreed with RG Sparrows that the "as amended" language "refers to an amendment of the obligations of [RG Sparrows] under the Consent Decree, achieved through the Bankruptcy Sale Order." [J.A. __; Doc. #66 at p. 10, n. 8.] It noted:

> The title of the Stipulated Order indicates more than one change to the consent decree, referring to "Modifications to Consent Decree." This language implies that the Stipulated Order modified the Consent Decree in two ways: amending the obligations under the Consent

> Decree and substituting ISG for BSC as the party responsible for
> complying with those amended obligations. This implication
> seemingly is confirmed by the fact that the Stipulated Order states that
> ISG assumed the ongoing obligations of the Consent Decree, as
> amended, on March 12, 2003, the date that ISG and BSC entered into
> the APA.

*Id*. at p. 11, n. 8.[18] Thus, CBF Intervenors' argument that the 2005 Stipulated

Order "substitute[ed] ISG for BSC in every item of the 1997 Consent Decree"

[CBF Op. Brief at p. 28] flies in the face of the Order's plain language.[19]

CBF Intervenors also make the desperate argument that Judge Motz had an

improper "predisposition" against their arguments simply because he made the

common sense observation that a purchaser would not be expected to buy a

contaminated site if doing so would subject it to "uncertain liabilities" for a

century's worth of contamination. *See* CBF Op. Brief at pp. 26-27. This argument

has no merit. *See, e.g., Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial

rulings alone almost never constitute a valid basis for a bias or partiality motion");

*Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) ("judicial remarks that are

---

[18] Of course, the CBF Intervenors never sought to intervene in the District Court proceeding prior to entry of the 2005 Stipulated Order. Consequently, they have no standing to appeal this order or to attack it collaterally through this proceeding.

[19] Similarly, CBF Intervenors' argument based upon the 2003 Settlement Agreement between BSC and the U.S. [*see* CBF Op. Brief at pp. 41-42] simply ignores that Agreement's express language, which states: "Under Section 1.3 of the Asset Purchase Agreement, ISG has assumed all liabilities and obligations relating to the Acquired Assets and arising under any Environmental Law, **except certain specifically excluded liabilities under Section 1.4 of the Asset Purchase Agreement**." [J.A. __; Doc. #48, Ex. 7(F) at p. 3 (emphasis added).]

- 38 -

'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge'"; citation omitted). Because the District Court's July 5, 2011 Opinion and Order were based upon the clear language of the BSC Sale Order, the approved APA and the 2005 Stipulated Order, as well as this Court's controlling precedent, the CBF Intervenors have no grounds to show that this ruling was arbitrary or otherwise constituted an abuse of discretion.

**E.    The District Court Did Not Abuse Its Discretion by Denying CBF Intervenors' Untimely Motion for Immaterial Discovery.**

Finally, CBF Intervenors argue that the District Court abused its discretion by denying their *post-adjudication* request for discovery seeking parol evidence of "what the parties to the 2003 Settlement Agreement and the 2005 Stipulated Order thought they had asked the courts to order."  CBF Op. Brief at p. 42, *et seq*. However, the 1997 Consent Decree's dispute resolution provisions do not entitle any party to seek discovery in any dispute resolution proceeding thereunder.

Aside from the fact that the parol evidence they sought to discover would not have been admissible to rebut the clear language of these documents, the CBF Intervenors *never sought leave to conduct such discovery prior to the March 11, 2011 hearing* on RG Sparrows' dispute resolution Petition.  In fact, their Motion for Extension of Time to Seek Reconsideration of the July 5, 2011 Opinion and Order and for Leave of Court to Conduct Targeted Discovery [J.A. __; Doc. #88]

- 39 -

was not filed until December 30, 2011, more than *nine months after the hearing* and more than *four months after* the Court's July 5, 2011 Opinion and Order adjudicating RG Sparrows' Petition.  Thus, it is not at all surprising that the February 13, 2012 order denying the CBF Intervenors' Motion [J.A. __; Doc. #92] noted the Court's "concern[] about the timeliness of the motion," and its belief that the discovery requested by Intervenors was immaterial "in light of the fact that my ruling was based upon the legal effect of the order entered in the bankruptcy proceedings."

A district judge is given "wide latitude in controlling discovery" and a district court's decision to permit or deny discovery is reviewed for abuse of discretion.  *Mallas v. United States*, 1995 U.S. App. Lexis 10766 at *5 (4th Cir. May 15, 1995).  Numerous court decisions have rejected appeals based upon a district court's denial of requests for discovery made after entry of judgment.  *See, e.g., Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993) (no abuse of discretion due to district court's denial of plaintiff's request for discovery following summary judgment for defendant); *Kirby v. General Elec. Co.*, 210 F.R.D. 180 (W.D.N.C. 2000), *aff'd*, 20 F. App'x. 167, 169 (4th Cir. 2001) (per curiam) (district court's denial of plaintiffs' motion for discovery filed after summary judgment for defendant affirmed); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139-140 (1st Cir. 2006) (a "party has an obligation to request

- 40 -

[discovery] in a timely manner" and plaintiffs' failure to do so until after the district court's entry of judgment "alone suffices to justify the district court's rejection of their motion"); *Stanwood Boom Works v. BP Exploration & Prod., Inc.*, 476 F. App'x. 572, 577 (5th Cir. 2012) (plaintiff "argued for additional discovery for the first time after summary judgment was granted, and therefore cannot complain that the opportunity for additional discovery was inadequate").

Accordingly, the CBF Intervenors cannot demonstrate an abuse of discretion by the District Court due to the denial of their untimely motion for immaterial discovery.

- 41 -

## CONCLUSION

Based upon the foregoing, Petitioner-Appellee/Cross-Appellant RG Sparrows respectfully requests that this Court enter an order:

(i)     dismissing the CBF Intervenors' appeal (No. 12-1593) in its entirety, or

(ii)    alternatively, affirming the District Court's Opinion and Order of July 5, 2011 [J.A. __ & __; Docs. ##66 & 67], Order of February 13, 2012 [J.A. __; Doc. #92] and Order of March 15, 2012 [J.A. __; Doc. #93].

Dated: June 21, 2013                    Respectfully submitted,

/s/ Vincent Atriano
Vincent Atriano
Andrew O. Etter
SQUIRE SANDERS (US) LLP
41 S. High Street
Columbus, Ohio 43215
*Telephone*:  (614) 365-2783
*Facsimile*:  (614) 365-2499
*Email:*   vincent.atriano@squiresanders.com
         andrew.etter@squiresanders.com

*Counsel for Petitioner-Appellee/Cross-Appellant RG Steel Sparrows Point, LLC*

- 42 -

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X]    this brief contains <u>10,167</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

/s/ Vincent Atriano

Attorney for *Petitioner-Appellee/Cross Appellant RG Steel Sparrows Point, LLC*

Dated:  June 21, 2013

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 21, 2013, the foregoing PAGE PROOF RESPONSE BRIEF OF APPELLEE/CROSS-APPELLANT RG STEEL SPARROWS POINT, LLC was served upon all counsel of record through this Court's ECF system.

/s/ Vincent Atriano
*Counsel for Petitioner-Appellee/Cross-Appellant RG Steel Sparrows Point, LLC*